Your Honors, Michael Pearson appearing for the appellants, Krishna Yenne and Sylvia Lopez-Marin. I'm going to try to keep to seven minutes and save three for rebuttal. Our position on appeal, Your Honors, is basically two points. First, that the petitioners have met the requirements for being granted asylum and being allowed to stay in the United States. And second, that the Board of Immigration Appeals simply failed to correct the defect that led this Court to remand the case back to them for reconsideration, essentially, a year or so ago. And that, at a minimum, the Court should remand the case, if it doesn't conclude that we went on the first point, for the actual consideration that we're entitled to on the imputed political opinion. Where's the evidence of imputed political opinion? The Board seemed to have, it's a little hard, perhaps, to understand what the BIA was saying, but it does, initially, it seemed to dispose of it simply on the same ground as the asylum and withholding of removal. We kicked it back. They say, well, it wasn't really raised, evidence suggests, the record suggests it was raised. But ultimately, they say, look, you didn't pursue it, and to the extent that it was talked about in the hearing, your client said she didn't know of any political basis for it. So where's, ultimately, the error? What would the BIA find in this record? Assuming we remanded it to say, no, take another closer look, where in the record is there evidence of imputed political opinion? Your Honor, just two points in response to that. First, I do think it's important that, to be clear, that they really did not look at the issue. They said, we didn't raise it, we didn't present it, that's just flat wrong. And it is essential that you look, that they look through the prism of that. Well, now, wait a minute. Let's talk about what they said, because they said, I'm looking at the August 28, 2006 statement. They say, nevertheless, after noting that your statement about the box not having been checked, despite the Respondent Counsel's initial statement as to intent, at no time during the proceedings below did he pursue, by argument or otherwise, an imputed political opinion claim. Now, that may or may not be belied by the record with the pretrial statement, but the testimony elicited primarily concerned the Respondent's claim that the criminal gangs were motivated to harm them because there were three girls living alone and because of their families' perceived wealth, based on the fact that everybody knew that the Respondent's mother lived in the United States. Indeed, when the immigration judge directly asked one of the Respondents whether she understood there to be any political motivation for the gangs' conduct, she twice answered that she did not know of any such motivation. Well, so, they say then, according to you, we clarify our prior decision that while it appears the Respondent's attorney acted to preserve his right to present an imputed political opinion claim, no such claim was ever actually presented below. Now, presented, was it put forward in the pretrial statement? Yes. Was it presented during the course of the hearing? According to them, no. So, that's still my question. It's one thing to put it in a pretrial statement, whatever. Where is it in the record before the immigration judge? Your Honor, the testimony that you recited is correct. There were two questions, as I recall, to Krishna Lopez-Marin. The first was essentially, Lopez-Marin, do you know whether it was something political versus criminal, you know, a criminal gang just acting out of criminal impulses? She said she didn't know. Then, a more specific question, you know, was there something about it that was political that you can specifically identify? And she said no, or that she wasn't aware of anything that she could call out. I think you have to bear in mind, I mean, these were three teenage girls, and I think for them to necessarily be able to articulate specifically what was political... Where in the record, if we can't get it from her testimony, what is it in the record that the BIA is supposed to be looking at? Well, there was testimony, I think, by all three girls, Your Honor, that the way that they lived and went about their business in the months and years before the ultimate incident indicated that they were acting in contrary and did not believe in what these Maras, these groups, did and espoused, and that that was sort of their consistent behavior, and that they believed that the Maras were acting in reaction to that, in ultimately kidnapping their sister, which they had previously threatened, you know, they had previously threatened kidnapping and harm and so forth, and that that was what they thought had ultimately happened when their sister disappeared and ultimately was found to have been kidnapped and raped and so forth. And so there is evidence, I think, from all three sisters that there was this pattern of abuse and harassment and threats, and that they felt very strongly that they had been living in a certain way, regular church attendance, not just refusing, not just to join the Maras themselves, but to really have anything to do with them, in a way that sent a very loud and clear message about what their beliefs were and what their attitudes were in a situation where the Maras are pervasive and pervasively powerful. I didn't understand why that was a political opinion. When you look at the definition of what it means about the government, and there wasn't anything that was political either about the Maras from the testimony I saw or the evidence or about their lifestyle. Well, Your Honor, I mean, I understand that it's not, we don't have the facts here that we have in some cases where there's trade union activity or political party activity or something like that, but it's our position that in this kind of context where the Maras are as pervasively powerful and where the government authorities seem as powerless to do anything about them, and where there is some evidence in the record about general conditions in El Salvador of connections between the government, former military, police on the one hand, and these gangs on the other, that to take a position and to indicate quite strongly a position that you're acting in opposition and unwilling to connect with groups like this becomes political, becomes a political position, and I... Let me ask you a question in terms of any limiting principle. Let's say you have 30,000 people in the Maras in the country, and I don't know how many million people who aren't, but you've got a lot of people. There must be people other than the three young women here who want to have nothing to do with the gangs. So if any person who has nothing to do with the gangs is a victim of what appears to be a criminal act by the gangs, and they sort of make their living by one kind of criminal venture or another, do all those victims have a claim they were persecuted on account of imputed political opinion? No, Your Honor. What distinguishes these three girls from any other residents who have no communication or affinity with the Maras? Well, certainly you have a lot of innocent bystanders who are victims of crime or victims of the Maras in El Salvador, but there is ample evidence in the record of a long and consistent pattern of harassment, of threats. One of the sisters was robbed. They had been threatened with kidnapping and rape before it actually happened. During the court, post the kidnapping of the one sister, another sister's kidnapping was threatened. So you've got a whole pattern here that's very clearly articulated as to which there's no dispute about credibility and no adverse finding of credibility. And I think all of that adds up to something that distinguishes these people from certainly many other people in El Salvador who are just going about their business and may become ultimately victims of crime. I'm happy to take additional questions. I'm hoping to save a minute here. Save a minute. Thank you, Your Honor. We'll give it to you. Thank you, Your Honors. And may it please the Court, I'm Joseph Hardy, appearing on behalf of the Attorney General. The Board found that the petitioners had not established their claims for asylum, withholding of removal, and protection under the Convention Against Political Opinion, a claim that was raised before this Court. Do that, but would you also address the Catt claim, since that doesn't require an imputed political opinion, particularly since you have evidence of rape and kidnap here? I'd like to initially note that the claim based on a particular social group was not exhausted before the Board and is not before this Court here today, as it was not raised in the opening brief, and again, it wasn't raised in the reply brief, even if you could say that it was preserved in the reply brief. With particular respect to the political opinion claim, I'd like to note that when this issue was remanded to the Board, it was not remanded to, say, decide the political opinion claim. It was to decide whether such a claim was raised. The Board took another look at it in its 2006 decision and decided that it wasn't raised. Well, clearly it was raised. I mean, it was in the pretrial statement, this whole discussion of political opinion. I think it was pointed out in the government's brief, or it was pointed out in the government's brief. They argued that, or they attempted to argue that the Maras, and we don't even know which Maras they were talking about, Maras meaning gangs, there are a number of gangs throughout the United States. Even if you could say there was a particular gang that they were referring to. It said political opinion. They argued political opinion. You're saying it wasn't, you may, the Board may have rejected it on the merits, but to say it wasn't even presented doesn't seem to be consistent with the record. I'm looking at the record. It says the girls' persecution was on account of their political opinion. That's one of the specific arguments raised in the pre-hearing statement. And then it goes on for several pages raising that particular argument. So I was very confused about why the BIA in looking at the record said, well, they never raised this claim or this argument. What I'd like to say that the Board did is they looked at the pretrial statement, saw that petitioners argued, okay, we're trying to say that these gangs are political in nature. You could tell by the way we dress, by the way we live that we disagreed with these gangs, criminal gangs, and it's because of that they decided to harass us. There's no evidence that these people are harassing them on account of any political opinion. It's just an assumption on behalf of the girls. You know, look at the way we dress. Well, how would they prove it? Call somebody from the Maras as a witness? Well, we have no proof here. That's just it. That's my question. How would they prove it? What they argued, as you heard today, that's essentially what counsel said today is that by resisting the Maras, who the government can't or won't control, they are, in essence, identifying themselves with the government and therefore that's, under our case law, is sufficient to create the notion of an imputed political opinion. Now, you can reject it. The Board can reject it. The immigration judge can reject it for all the reasons you're saying here, but to say it wasn't presented and to tell us that there wasn't any evidence on the grounds that you're saying wasn't what neither the immigration judge nor the BIA have articulated is that, as I read, what they said about the evidence was what the one petitioner said during the course of the hearing. Now, that may be going to the Maras, but to say that they didn't present it isn't right. I think there's a difference between the pre-trial statement with making it... Do you concede that they presented it and that word is normally known? You just argued that they had waived an argument by not stating it in their brief or in their reply brief. You can't say that about the imputed political opinion, can you? Actually, I think there's a difference between not raising it before the Board or the particular social group claim before the Board and at hearing with the court. In the pre-trial statement, they're saying, this is what we're going to argue. Mr. Pearson acknowledged at the immigration hearing that, oh, this was not raised in the asylum claim. Everything, the asylum claim only mentioned a religion claim and a particular social group claim. The religion claim was specifically and explicitly waived at the immigration hearing. Particular social group, as I said, was waived before the Board, wasn't exhausted before the Board, and then it was waived before the court. I think we're not making any progress here. I think, why don't we shift over to the CAT claim does not require imputed political opinion. You might want to hear what I'm going to ask first. So the question, my first question is, does the government contest that if they established a reasonable fear of being raped and kidnapped, or kidnapped and raped as their sister was, that kidnap and rape would constitute torture? If they were to be reasonably at risk of being subjected to that, would that constitute torture? If there was a clear probability, I would say that could constitute. And I'd point out that the sister that they So where does the Board address the non-imputed political opinion basis for denying the CAT claim? Where is it in the record that the BIA ever addressed the likelihood that they wouldn't be subjected to the very kind of treatment that their sister was subjected to? And the first opinion, I'd like to point out that this issue wasn't before the Board in its 2006 opinion. In the 2005 opinion, the Board did say that Krishna specifically said that she had no fear of the government. And also, to the extent that it could be said that someone who the government can't control, well, you have to show that there's an awareness on behalf of the government, and that just an utter inability for the government to You don't think the country reports support that? Actually, I think the country reports go against that. The country reports said that kidnappings were significantly reduced in El Salvador. And to the extent that they did exist, and this is going back to the, if there is a political opinion claim raised, to the extent that there were kidnappings there, they were on account of, they were ransom kidnappings. People wanted money from people, in this case, thinking that people's families were in the United States, they had money, well, let's kidnap them. I think the kidnapping of the sister, who's not a petitioner, where she's kidnapped and raped, if the government can't prevent the gangs from raping young women, doesn't that constitute, under our precedent, torture? If there's a 51 percent or more probability that, on return, these petitioners would be raped, wouldn't they qualify for cat relief? They would, but that issue isn't before the court, it wasn't before the board. Well, wasn't that issue before the board? And didn't the board make a ruling in its first opinion that the evidence wasn't sufficient to show that there were kidnappings? I believe the board's opinion went specifically to the government actors, whether the government act, yes, and under the regulations, H.C.L. 4-208-18-7, there has to be an awareness on the part of the government, even if you're not talking about the government itself, you're talking about someone who the government, someone's working for the government, there we have, in this case, I thought that the first opinion of the board didn't use the word awareness, that the opinion's language just said that they hadn't presented a claim under CAT. I believe the first opinion said that they hadn't presented a claim specifically as to... Well, why don't we read what it said? It said, having failed to establish their eligibility for asylum, having discussed imputed political opinion in the prior paragraph, the respondents have also failed to establish their eligibility for withholding or removal and have also failed to demonstrate that they are eligible for relief under the United Nations Convention Against Torture. And that constitutes an affirmance of the immigration judge's agreement. Right, and what did he base it on? And he based it on the fact that there was no awareness, or one person and the girls agreed said that they had no fear of the government and to the extent that there was, I see that my time has expired, may I? You can answer the question. They said that, well, the girls specifically said that they hadn't called the police back. They initially called the police. Police said for a missing persons report, as is the case with many cities across the United States, you have to wait 72 hours. Well, the girls said they hadn't called the police back, so we don't know under this... Because they were afraid of the police. I'm sorry? Because they were afraid of the police. They called the police and they said that they didn't call the police back because they were afraid of the Maras, not because of the police themselves. Because they thought, yeah, because they thought if they went to the police, the Maras would come after them. The Maras would do something, but we don't know if the police would be able to do anything because they never gave the police that opportunity. I'd just like to conclude, unless there are any other questions, that the court should affirm that Boar is denied of the asylum claim, the withholding claim, and the claim for protection under the Convention Against Torture. Thank you. Your Honors, let me just try to address two points, if I may, on the rebuttal. First, I'd just reiterate again that the issue of imputed political opinion, I really do not think, I think quite clearly, as your questions would indicate, was not raised properly, and we should at least have an opportunity for that, and it affects the standard of review here, and it's not just a superfluous issue. Second, on the Convention Against Torture... I'm sorry, you say it wasn't raised properly? No, no, it was raised properly. It wasn't considered properly. That's what I meant to say, Your Honor. There's a difference. Yeah, I... For sure. Second, Your Honor, on the Convention Against Torture, just to tick off a few points, the issue is still before the court. It's been in front of us all the time. It's more likely than not, frankly, on the record that we have, that they will be tortured when they go back, in one sense or another, the kidnapping, rape. They were threatened ahead of time. There was a persistent pattern of harassment. What about counsel's argument, however, that the IJ denied it on the merits, because there's a failure to establish the police were aware of this incident, and therefore didn't have the opportunity to address it? Well, Your Honor, they were advised of the incident in the first place, and it's certainly true there was no follow-up, but I think it puts the petitioners in an unfair position when they testify, and it's consistent with the general evidence about El Salvador, that the police there do nothing about this, and would not have stopped it, and would not have prevented it, to put them in a position where they would have to contact the police with the only purpose, only accomplishing, perhaps, that tip-off to the kidnappers that they had done specifically what they were told not to do to save their sister, but not accomplishing anything. Again, given the evidence in the record about the general connections and approach of the police in El Salvador and things like this, I just don't think that's a fair burden to put on the petitioners. Do we have to view the BIA's first opinion as an adoption of the immigration judge's reasoning? The BIA just said there's no claim. I mean, under Ventura, do we have to remand that if we think there's an issue, or would we be free to rule on the cab claim? Well, I think that the court's free to rule on it at this point. I think the record is clear enough about the probability. As you said, Judge Gould, if it's a 51 percent chance that these folks are going to be tortured upon return, and I think the record establishes that, then I don't think that under Ventura you need to remand it. I think you can decide it. I guess the only other issue I'd say on acquiescence is that I think it's pretty clear from the record that that is exactly what's going on in El Salvador, and so I think we have the necessary government connection and complicity. It may be too strong a word. But where are these petitioners now? Are they living in the Seattle area? They're all local, Your Honor. Their mother lives here. She, sadly enough, fled El Salvador during the Civil War in 1990 or 1991, and they all live in the Burien area. So were they, I don't know, they were in school when this started? Where are they right now? The three sisters. And how old are they? They are, I believe they are 21, 19, and 17. I may be a little bit off. And two of them graduated from Highline High School last year. One is working, helping her mother at her job. The other, is hoping to attend Highline Community College or Green River Community College next quarter. And the third sister, I believe, is at home and actually is the mother of a child, so she's at home with her child. Okay. Thank you, Your Honor. All right. The case argued is submitted. Appreciate the argument.
judges: Fisher, Gould, Ikuta